FILED
NOV 26 2007
U.S. COURT OF FEDERAL CLAIMS

ORIGINAL

IN THE
UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | |
|---|---|
| GREAT LAKES DREDGE & DOCK CO. LLC<br>2122 York Road<br>Oak Brook, Illinois 60523<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 07-817 C |

# COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PREMANENT INJUNCTIVE RELIEF

For its Complaint in the above-captioned matter, plaintiff Great Lakes Dredge & Dock Company LLC ("GLDD") states as follows:

## NATURE OF ACTION

1. This is a pre-award bid protest challenging the actions of the United States Army Corps of Engineers ("Corps"). The Savannah District, Charleston Contracting Office of the Corps issued Request for Proposals No. W912HN-07-R-0109 ("RFP") to obtain offers to perform maintenance dredging in the Entrance Channel to Charleston Harbor. The Savannah District and the Charleston Contracting Office are part of the Corps' South Atlantic Division.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(b).

## PARTIES

3. Plaintiff GLDD is a Delaware limited liability company with its principal place of business in Oak Brook, Illinois. GLDD is one of the largest dredging contractors in the United States and has successfully performed maintenance dredging in the Charleston Entrance Channel several times, most recently in 2003.

4. Defendant is the United States, acting through its agency the U.S. Army Corps of Engineers.

## FACTUAL ALLEGATIONS

5. The Corps provided notice of its intent to solicit offers under the RFP as required by Federal Acquisition Regulation ("FAR") Part 5 on September 21, 2007.

6. The Corps issued the RFP on October 29, 2007. The RFP originally called for maintenance dredging of the Charleston Entrance Channel and the Georgetown Entrance Channel in South Carolina. The work in the Georgetown Entrance Channel was deleted from the RFP by Amendment 0002, effective November 15, 2007. The RFP currently calls for offerors to submit proposals by 4:00 p.m. EST on November 29, 2007.

7. Maintenance dredging involves the removal of material that has shoaled into a channel or area since the last time it was dredged. The RFP, at ¶ 1.3.1 of Section 02325, confirms this:

> Materials required to be excavated under this contract have accumulated because of shoaling since the areas were last dredged. The materials to be removed are typically composed of very loose or very soft mixtures of sand, silt, and clay size particles in varying proportions.

8. The RFP also requires that the materials dredged from the Charleston Entrance Channel be disposed of in an offshore Ocean Dredged Material Disposal Site ("ODMDS"). RFP Section 02325 ¶¶ 3.9.1, 3.9.3. Because of the offshore location of this

disposal site, the RFP requires offerors to use a Coast Guard-certified hopper dredge. A hopper dredge is a self-propelled vessel that pumps material from the sea bottom into a bin or hopper contained in the dredge. The loaded dredge then sails to the disposal area, and under this RFP, bottom dumps the material into the disposal area by opening the bottom of the hopper.

9. The Charleston Entrance Channel work called for by the RFP, involving maintenance dredging of very loose or very soft material and bottom dumping that material in a designated disposal area, is routine dredging work that has been successfully completed by dredging contractors repeatedly in recent years pursuant to contracts awarded based on sealed bidding.

10. The predominate method of procurement historically used by the Corps for dredging work has been sealed bidding. When the Corps uses sealed bidding, it issues an Invitation for Bids (IFB") and follows the procedures set forth in FAR Part 14.

11. The dredging industry is a small and well-established industry in which the qualifications of the participating contractors are well known to the Corps, making the procurement of dredging uniquely well suited to procurement by sealed bidding.

12. In a recent acquisition plan, the Corps' South Atlantic Division (of which the Savannah District is a part) reported that its sealed bid approach had excelled in program execution during the last two years.

13. Contracts for maintenance dredging in the Charleston Entrance Channel have been solicited by the Corps seven times since 1994. On each of those occasions, the Corps used sealed bidding procedures and received two or more bids in response to the IFB. These solicitations are summarized below:

| Solicitation Number | Solicitation Type | Date | Number of Bidders |
|---|---|---|---|
| W912HP-05-B-0005 | IFB | 10/17/05 | 4 |
| DACW60-03-B-0008 | IFB | 10/23/03 | 4 |
| DACW60-03-B-0001 | IFB | 11/25/02 | 3 |
| DACW60-99-B-0002 | IFB | 02/23/99 | 2 |
| DACW60-98-B-0012 | IFB | 11/20/98 | 2 |
| DACW60-97-B-0017 | IFB | 12/31/96 | 2 |
| DACW60-94-B-0009 | IFB | 12/10/94 | 3 |

The Corps received at least three bids each of the last three times it has solicited maintenance dredging work in the Charleston Entrance Channel. GLDD, Weeks Marine, Inc. ("Weeks"), and Manson Construction Company ("Manson") all submitted bids in response to the two most recent (2003 and 2005) IFBs.

14. GLDD, Weeks and Manson are the three largest dredging companies in the United States. Between them, they have performed hundreds of dredging projects for the Corps over the last decade. The Corps is very familiar with the equipment owned by these companies and with the past performance records of these companies.

15. Despite the Corps' historical use of sealed bidding for dredging work in general and maintenance dredging work in the Charleston Entrance Channel in particular, the Corps issued the 2007 maintenance dredging solicitation for Charleston Entrance Channel as a request for proposals using FAR Part 15 procedures. The RFP provides for award of a contract to the low priced, technically acceptable offeror.

16. Section 00100B of the RFP ("Evaluation Factors For Award"), at page 9 of 49, identifies the factors and significant subfactors that "will be used to determine [the] low price technically acceptable" offer.

17. Section 00100B identifies two evaluation factors, Technical Merit and Price. It also identifies four subfactors under the Technical Merit factor, which are listed in

descending order of importance: Past Performance, Project Experience, Equipment Documentation, and Small Business Participation Plan.

18. For the Technical Merit factor, the RFP (at page 9 of 49) provides for evaluation on a Pass/Fail basis by providing for two ratings -- Acceptable and Unacceptable. The RFP provides for evaluation of each of the Technical Merit subfactors on a similar basis. Past Performance will be rated Satisfactory, Unsatisfactory or No Rating (if the offeror had no past performance). RFP at p. 13 of 45.

19. The RFP provides that Project Experience, defined as whether the offeror could document a production rate of at least 250,000 cubic yards ("cy") per month with a hopper dredge on three previous projects in the last five years, will be rated Acceptable or Unacceptable. RFP at p. 11 & 13 of 49. Equipment Documentation, defined as whether the offeror has a Coast Guard-certified hopper dredge, also will be rated Acceptable or Unacceptable. RFP at p. 11 & 13 of 49. Finally, the RFP also provided for evaluation of Small Business Participation Plans as either Acceptable or Unacceptable. RFP at p. 14 of 49.

20. With respect to price, the RFP states that price will not be scored, but will be reviewed for possible mistakes, clerical errors and unbalancing, as well as reasonableness. RFP at p. 10 & 12 of 49. The Corps is required to perform these same analyses when sealed bidding is used pursuant to FAR 14.407-2 (clerical mistakes), FAR 14.407-3 (mistakes), and FAR 14.408-2 (price reasonableness and unbalancing).

21. The RFP also provides that the Corps "intends to evaluate proposals and award a contract without discussions with offerors" and that therefore, an offeror's initial proposal "should contain the offeror's best terms from a price and technical standpoint." RFP at p. 10 of 49.

## FIRST CLAIM FOR RELIEF

The Corps' Use of An RFP Violates Applicable Federal Procurement Statute And Regulations, And The Corps' Use Of Negotiated Procurement Procedures Rather Than Sealed Bid Procedures Lacks A Rational Basis

22. The Competition in Contracting Act, 10 U.S.C. § 2304(a), mandates that an agency **shall** solicit sealed bids if:

- time permits the solicitation, submission and evaluation of sealed bids;
- the award will be made on the basis of price and other price-related factors;
- it is not necessary to conduct discussions; and
- there is a reasonable expectation of receiving more than one sealed bid.

FAR 6.401(a) sets forth the same, 4-part analysis. In addition, FAR 14.103-1(a) states that sealed bidding "shall be used whenever the conditions in FAR 6.401(a) are met," and FAR 36.103(a) reiterates this requirement for construction contracts like the dredging contract at issue here.

23. The RFP violates 10 U.S.C. § 2304(a), FAR 6.401(a), FAR 14.103-1(a) and FAR 36.103(a) because each of the four conditions set forth in the statute and regulations is satisfied here. Time permits the solicitation of sealed bids for the Charleston Entrance Channel dredging. The award of a contract for this work effectively will be based on price because the RFP's "technical" evaluation calls for review, on a pass/fail basis, of issues that the Corps now considers on a pass-fail basis in performing the responsibility determination required by FAR 9.104. In addition, no "technical" evaluation is needed because the Corps is very familiar with the equipment and past performance records of the three large dredging companies likely to

submit offers. The RFP explicitly recognizes that discussions are not necessary and are not even contemplated. In addition, based on recent bidding history, there is more than a reasonable expectation that the Corps will receive three bids for the work. The Corps lacks a rational basis for attempting to procure the Charleston Entrance Channel maintenance dredging work using negotiated procurement procedures, and its decision to do so is arbitrary and capricious.

24. GLDD is likely to prevail on the merits of this case and will suffer prejudice and irreparable harm if an injunction is not issued. The issuance of the injunctive relief requested by GLDD will not substantially harm the government or third parties and will serve the public interest.

## REQUEST FOR RELIEF

WHEREFORE, GLDD respectfully requests that the Court grant judgment in its favor and order the following relief:

1. A Temporary Restraining Order that prevents the Defendant from receiving proposals under the RFP and proceeding with the RFP until GLDD's preliminary injunction motion can be heard;

2. A preliminary injunction that prevents the Defendant from receiving proposals and proceeding with the RFP until a final ruling on the merits by the Court;

3. A permanent injunction that prevents Defendant from soliciting offers or awarding a contract for the Charleston Entrance Channel maintenance dredging work on any basis other than competitive sealed bidding in accordance with FAR Part 14;

4. An award to GLDD of its attorney's fees and costs in pursuing this action; and

5. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902
Email: dsauls@steptoe.com

**Attorney of Record for Great Lakes Dredge & Dock Company LLC**

Dated: November 26, 2007