ORIGINAL

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

FILED
NOV 26 2007
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **GREAT LAKES DREDGE & DOCK COMPANY LLC,** | ) | |
| **Plaintiff,** | ) | 07-817 C |
| **v.** | ) | **Civil Action No.** ______ |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF GREAT LAKES DREDGE & DOCK COMPANY LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902

Attorney of Record for Plaintiff
Great Lakes Dredge & Dock Company LLC

Dated: November 26, 2007

## Table of Contents

**Page**

I. STATEMENT OF ISSUES ........ 1

II. STATEMENT OF FACTS/STATEMENT OF THE CASE ........ 1

III. ARGUMENT ........ 5

A. Jurisdiction And Standard Of Review In Bid Protest Cases ........ 5

B. The Corps' Use Of An RFP Rather Than An IFB To Procure The Work Violated Applicable Law And Regulations And Was Arbitrary And Capricious ........ 6

C. GLDD Is Entitled To Injunctive Relief ........ 13

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

CASES

A&D Fire Prot., Inc. v United States,
72 Fed. Cl. 126 (2006) ....................13

Antarctic Support Assocs. v. United States,
46 Fed. Cl. 145 (2000) ....................6

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) ....................13

Citizens to Preserve Overton Park v. Volpe,
401 U.S. 402 (1971) ....................5, 6

Ellsworth Assocs., Inc. v. United States,
45 Fed. Cl. 388 (1999) ....................13

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993) ....................13

Great Lakes Dredge & Dock Co. v. United States,
60 Fed. Cl. 350 (2004) ....................5, 6, 13, 14

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) ....................5

In re Sang-Su Lee,
277 F.3d 1338 (Fed. Cir. 2002) ....................6

Magellan Corp. v. United States,
27 Fed. Cl. 446 (1993) ....................13

Overstreet Elec. Co. v. United States,
47 Fed. Cl. 728 (2000) ....................13

Reilly's Wholesale Produce v. United States,
73 Fed. Cl. 705 (2006) ....................13

United Int'l Investigative Servs., Inc. v United States,
41 Fed. Cl. 312 (1998) ....................14

Weeks Marine, Inc. v. United States,
Case No. 07-700C, slip. op. (Fed. Cl. Nov. 6, 2007) .................... passim

Weeks Marine, Inc. v. United States,
Case No. 07-700C, Order to Amend And Enforce Judgement (Fed. Cl. Nov. 16, 2007) ... 9

**STATUTES**

28 U.S.C. § 1491(b) ... 5

Administrative Procedure Act, 5 U.S.C. § 706(2)(A) ... 5

Competition in Contracting Act, 10 U.S.C. § 2304(a) ... 5, 6, 8, 12, 14

**REGULATIONS**

FAR 5.203(c) ... 7

FAR 6.401(a) ... 6, 8, 12

FAR 9.104 ... 9, 10

FAR 9.104-1(c) ... 10

FAR 9.104-1(b), (f) ... 11

FAR 14.103-1(a) ... 6, 8

FAR 14.202-1(a) ... 7

FAR 14.407-2 ... 4

FAR 14.407-3 ... 4

FAR 14.408-2 ... 4

FAR 19.702(a) ... 11

FAR 19.704 ... 11

FAR 19.705-2(a) ... 11

FAR 19.705-4(b) ... 11

FAR 36.103(a) ... 6, 8

## I. STATEMENT OF ISSUES

1. Whether The U.S. Army Corps Of Engineers' Use Of FAR Part 15 Negotiated Procurement Procedures Rather Than FAR Part 14 Sealed Bid Procedures In Soliciting The Charleston Entrance Channel Maintenance Dredging Work Violated Applicable Procurement Laws And Regulations And/Or Was Arbitrary and Capricious

## II. STATEMENT OF FACTS/STATEMENT OF THE CASE

On September 21, 2007, the U.S. Army Corps of Engineers ("Corps") issued a pre-solicitation notice in accordance with Federal Acquisition Regulation ("FAR") Part 5 that advertised a Request for Proposals for maintenance dredging of the Charleston Entrance Channel and the Georgetown Entrance Channel in South Carolina. On October 29, 2007, the Charleston Contracting Office of the Corps' Savannah District issued Request for Proposal No. W912HN-07-R-0109 ("the RFP") for this work. The Georgetown Entrance Channel portion of the work was deleted from the RFP by Amendment 0002, effective November 15, 2007. The RFP currently calls for offerors to submit proposals by 4:00 p.m. EST on November 29, 2007.

Maintenance dredging involves the removal of material that has shoaled into a channel or area since the last time it was dredged. The RFP, at ¶ 1.3.1 of Section 02325, confirms this:

> Materials required to be excavated under this contract have accumulated because of shoaling since the areas were last dredged. The materials to be removed are typically composed of very loose or very soft mixtures of sand, silt, and clay size particles in varying proportions.

The RFP also requires that the materials dredged from the Charleston Entrance Channel be disposed of in an offshore Ocean Dredged Material Disposal Site ("ODMDS"). RFP Section 02325 ¶¶ 3.9.1, 3.9.3. Because of the offshore location of this disposal site, the RFP requires offerors to use a Coast Guard-certified hopper dredge. A hopper dredge is a self-

propelled vessel that pumps material from the sea bottom into a bin or hopper contained in the dredge. The loaded dredge then sails to the disposal area, and under this RFP, bottom dumps the material into the disposal area by opening the bottom of the hopper. The Charleston Entrance Channel work called for by the RFP, involving maintenance dredging of very loose or very soft material and bottom dumping that material in a designated disposal area, is routine dredging work of a type that has been successfully performed by dredging contractors numerous times in recent years pursuant to contracts solicited by sealed bidding.

The predominate method of procurement historically used by the Corps for dredging work has been sealed bidding. When the Corps uses sealed bidding, it issues an Invitation for Bids ("IFB") and follows the procedures set forth in FAR Part 14. The dredging industry is a small and well-established industry in which the qualifications of the participating contractors are well known to the Corps, making the procurement of dredging uniquely well suited to procurement by sealed bidding. In a recent acquisition plan, the Corps' South Atlantic Division (of which the Savannah District is a part) reported that its sealed bid approach had excelled in program execution during the last two years.

Contracts for maintenance dredging in the Charleston Entrance Channel have been solicited by the Corps seven times since 1994. On each of those occasions, the Corps used sealed bidding procedures and received two or more bids in response to the IFB. These solicitations are summarized below:

| Solicitation Number | Solicitation Type | Date | Number of Bidders |
|---|---|---|---|
| W912HP-05-B-0005 | IFB | 10/17/05 | 4 |
| DACW60-03-B-0008 | IFB | 10/23/03 | 4 |
| DACW60-03-B-0001 | IFB | 11/25/02 | 3 |
| DACW60-99-B-0002 | IFB | 02/23/99 | 2 |
| DACW60-98-B-0012 | IFB | 11/20/98 | 2 |
| DACW60-97-B-0017 | IFB | 12/31/96 | 2 |
| DACW60-94-B-0009 | IFB | 12/10/94 | 3 |

The Corps received at least three bids each of the last three times it has solicited maintenance dredging work in the Charleston Entrance Channel. GLDD, Weeks Marine, Inc. ("Weeks"), and Manson Construction Company ("Manson") all submitted bids in response to the two most recent (2003 and 2005) IFBs.

GLDD, Weeks and Manson are the three largest dredging companies in the United States. Between them, they have performed hundreds of dredging projects for the Corps over the last decade. The Corps is very familiar with the equipment owned by these companies and with the past performance records of these companies.

Despite the Corps' historical use of sealed bidding for dredging work in general and maintenance dredging work in the Charleston Entrance Channel in particular, the Corps issued the 2007 maintenance dredging solicitation for Charleston Entrance Channel as a request for proposals using FAR Part 15 procedures. The RFP provides for award of a contract to the low priced, technically acceptable offeror. Section 00100B of the RFP ("Evaluation Factors For Award"), at page 9 of 49, identifies the factors and significant subfactors that "will be used to determine [the] low price technically acceptable" offer. It includes two evaluation factors, Technical Merit and Price, and four subfactors under the Technical Merit factor, which are listed in descending order of importance: Past Performance, Project Experience, Equipment Documentation, and Small Business Participation Plan.

For the Technical Merit factor, the RFP (at p. 9 of 49) provides for evaluation on a pass-fail basis by providing for two ratings -- Acceptable and Unacceptable. The RFP provides for evaluation of each of the Technical Merit subfactors on a similar basis. Past Performance will be rated Satisfactory, Unsatisfactory or No Rating (if the offeror had no past performance). RFP at p. 13 of 45.

The RFP provides that Project Experience, defined as whether the offeror could document a production rate of at least 250,000 cubic yards ("cy") per month with a hopper dredge on three previous projects in the last five years, will be rated Acceptable or Unacceptable. RFP at p. 11 & 13 of 49. Equipment Documentation, defined as whether the offeror has a Coast Guard-certified hopper dredge, also will be rated Acceptable or Unacceptable. RFP at p. 11 & 14 of 49. Finally, the RFP also provided for evaluation of Small Business Participation Plans as either Acceptable or Unacceptable. RFP at p. 14 of 49.

With respect to price, the RFP calls for award of a firm fixed-price contract and states that price will not be scored, but will be reviewed for possible mistakes, clerical errors and unbalancing, as well as reasonableness. RFP at p. 10, 12 and 24 of 49.[1] The RFP also provides that the Corps "intends to evaluate proposals and award a contract without discussions with offerors" and that therefore, an offeror's initial proposal "should contain the offeror's best terms from a price and technical standpoint." RFP at p. 10 of 49.

As set forth in more detail below, the Corps' attempt to procure the routine Charleston Entrance Channel maintenance dredging work using FAR Part 15 negotiated procurement procedures rather than using FAR Part 14 sealed bidding procedures violates the

[1] The Corps is required to perform these same analyses when sealed bidding is used. See FAR 14.407-2 (clerical mistakes), FAR 14.407-3 (mistakes), and FAR 14.408-2 (price reasonableness and unbalancing).

Competition in Contracting Act and related FAR provisions. Therefore, GLDD seeks injunctive relief to prohibit the Corps from soliciting this work in violation of law.

## III. ARGUMENT

### A. Jurisdiction And Standard Of Review In Bid Protest Cases

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1491(b), which gives the Court jurisdiction over both pre-award and post-award bid protests. To afford relief in bid protest cases, the Court may award any relief it considers proper, including injunctive and declaratory relief, except that any monetary relief is limited to bid preparation and proposal costs. Id. at 1491(b)(2).

Section 1491(b)(4) provides that the Court must review agency action in a bid protest case using the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), under which agency action should be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. The Federal Circuit has held that a protest should be granted if either: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).

In reviewing agency action, the Court must consider whether the agency's decision was based on consideration of all relevant factors and whether there has been a clear error of judgment. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971); Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 358 (2004). If the agency has not considered all relevant factors and articulated a rational connection between the facts found and

the choice made, its decision will be set aside as arbitrary and capricious. Id.; Antarctic Support Assocs. v. United States, 46 Fed. Cl. 145, 154 (2000).

Although the arbitrary and capricious standard is deferential, it does not shield agency decisions from a "thorough, probing, in-depth review." Overton Park, 401 U.S. at 415. In order for this Court to achieve meaningful judicial review, the agency must "present a full and reasoned explanation of its decision . . . as supported by the agency record, and explain its application of the law to the found facts." In re Sang-Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002). Moreover, this Court recently has held that a procuring agency's discretion "does not empower an agency to employ a procurement method in violation of applicable law." Weeks Marine, Inc. v. United States, Case No. 07-700C, slip. op. at 10 (Fed. Cl. Nov. 6, 2007).

### B. The Corps' Use Of An RFP Rather Than An IFB To Procure The Work Violated Applicable Law And Regulations And Was Arbitrary And Capricious

The Competition in Contracting Act, 10 U.S.C. § 2304(a), unequivocally states that agencies ***shall*** use sealed bidding if four conditions are met:

- time permits the solicitation, submission and evaluation of sealed bids;
- award will be made on the basis of price and other price-related factors:
- its is not necessary to conduct discussions; and
- there is a reasonable expectation of receiving more than one sealed bid.

See FAR 6.401(a); FAR 14.103-1(a); FAR 36.103(a). The fact that three of these four conditions are satisfied in the present case can be established quickly.

First, the Corps clearly had time to solicit sealed bids. Pursuant to FAR 5.203(a), an agency is required to give 15 days notice of a proposed contract action. Here, the Corps

provided a pre-solicitation notice on September 21, 2007, more than a month before the RFP was issued on October 29, 2007. FAR 5.203(c) and 14.202-1(a) further require a bidding time (time between issuance of the solicitation and opening of bids) of 30 days. The RFP was issued on October 29, and proposals currently are due on November 29, 2007, so the Corps provided contractors more than 30 days to submit their offers. Thus, the Corps had more than adequate time to use sealed bidding procedures. Indeed, the use of sealed bids should take ***less*** time than the Corps' RFP approach because sealed bids do not require a separate evaluation of technical merit or past performance.

The condition that discussions are not required plainly is satisfied here. The RFP explicitly states (at Section 00100B, page 10 of 49) that the Corps "intends to evaluate proposals and award a contract without discussions," and it therefore warns that "the offeror's initial proposal should contain the offeror's best terms from a price and technical standpoint."

There also is no question that the Corps had a reasonable expectation of receiving more than one bid. As noted above, the Corps has received at least two bids each of the seven times it has solicited bids for maintenance dredging in the Charleston Entrance Channel since 1994. The Corps has received at least three bids the last three times it has solicited this work, and it received bids from GLDD, Weeks and Manson -- the three largest dredging companies in the country – in response to each of the most recent two IFBs. Therefore, the Corps has a reasonable expectation of receiving at least three bids (from these three companies) in connection with this procurement.

For these reasons, the only possible justification for using an RFP rather than an IFB for the Charleston Entrance Channel solicitation is the Corps' purported need to evaluate factors other than price. None of the "Technical Merit" subfactors in the RFP, however,

addresses an offeror's technical approach or plan for performing the work. This is because the Charleston Entrance Channel maintenance dredging project is routine dredging work, and all offerors will use the same type of equipment and the same work methods.

Moreover, as shown below, the "Technical Merit" subfactors focus on the same criteria – past performance and the availability of the proper equipment -- that the Corps is required to consider when using sealed bid procedures as part of the responsibility determination required by FAR 9.104. Indeed, because the RFP provides for evaluation of these subfactors on a pass-fail, acceptable/unacceptable basis, the RFP's technical evaluation in reality amounts to no more than the responsibility determination required under sealed bidding procedures. In addition, because the Corps is very familiar with the past performance records and equipment of the likely offerors, each of whom has successfully completed numerous maintenance dredging jobs for the Corps, all offerors will be found to be technically acceptable, and contract award will be based on price.

In its recent, November 6, 2007 decision in Weeks Marine, this Court held that the Corps' South Atlantic Division ("SAD") of which the Savannah District is a part, could not use indefinite delivery indefinite quantity ("IDIQ"), multiple award task order contracts to procure dredging work in the SAD for the next five years. The Court's decision was based, in part, on its holding that SAD's proposed use of IDIQ task order contracting, with the task orders awarded using negotiated procurement procedures rather than sealed bidding, violated 10 U.S.C. §2304(a), FAR 6.401(a), FAR 14.103-1(a), and FAR 36.103(a). Weeks Marine at 11-13.

In reaching this decision, the Court found that:

- Historically, the Corps "has employed competitive sealed bidding procedures for dredging work, where contract awards are based on price" (p. 1-2);

- SAD's sealed bid approach had "'excelled in program execution' during the past two years" and that "the traditional sealed bidding approach has produced excellent results" (p. 3, 5);

- The ***"Court would be hard-pressed to identify any contracts better suited to sealed bid procurements than dredging. If not appropriate for dredging work, it is difficult to imagine when sealed bidding ought to be used"*** (p. 3-4); and

- The Corps' stated desire to consider evaluation factors other than price in dredging industry procurements "is a weak justification to abandon sealed bidding" and did not support use of RFP procedures rather than sealed bidding for dredging work (p. 12).

(emphasis added). Indeed, in a supplemental order dated November 16, 2007, this Court permanently enjoined the Corps from soliciting or awarding contracts for two maintenance dredging projects and one beach nourishment project on any basis other than competitive sealed bidding in accordance with FAR Part 14. Weeks Marine, Inc. v. United States, Order to Amend and Enforce Judgment at 4 (Fed. Cl. Nov. 16, 2007).[2]

The Court's reasoning -- and the result -- in Weeks Marine apply equally here. The Charleston Entrance Channel RFP sets forth four non-price evaluation factors. The first three (Past Performance, Project Experience, and Equipment Documentation) are essentially the same factors considered by the Court in Weeks Marine. With respect to Past Performance, the Court recognized in Weeks Marine that "the dredging industry consists of a small group of highly specialized contractors who are well known to" the Corps and that "where the contractors

[2] In that order, the Court permitted the Corps to use negotiated procurement procedures for a separate project at Kings Bay because of the: (1) urgency surrounding the project; (2) the "somewhat unique" defense and security interests presented by the project; and (3) difficulties the agency had encountered in recent years using sealed bids on that project. None of these concerns is at issue here.

are well known to the agency, a responsibility determination under FAR 9.104 should suffice." Weeks Marine at 12.

This is true in the present case as well. As noted above, GLDD, Weeks and Manson have submitted bids in response to the most recent two Charleston Entrance Channel maintenance dredging solicitations, and each is likely to submit an offer for the current project. The Corps is intimately familiar with the past performance of these three contractors, who are the largest in the dredging industry, because these contractors have performed and successfully completed hundreds of dredging contracts for the Corps in the last decade, including routine maintenance dredging contracts for the South Atlantic Division and the Savannah and Charleston Districts. Moreover, the Corps must make the same determination of an offeror's past performance that is called for by the RFP here (Satisfactory or Unsatisfactory) in making the responsibility determination required by FAR 9.104 before awarding any dredging contract, including one solicited by sealed bidding. See FAR 9.104-1(c) (to be considered responsible, the contractor must "have a ***satisfactory*** performance record" (emphasis supplied). Therefore, the past performance subfactor is not a basis for requiring negotiated procurement procedures.

The RFP also calls for evaluation of Equipment Documentation and Project Experience. The RFP makes plain, however, as in Weeks Marine, that these "technical" subfactors merely require offerors to demonstrate that they have access to or possess the dredging equipment needed to perform the work. Weeks Marine at 12. Indeed, under the Equipment Documentation subfactor, the offeror must merely show that it has a Coast Guard-certified hopper dredge (RFP at p. 11 of 49), and the Project Experience subfactor assesses only whether that dredge has achieved a production rate of 250,000 cy per month on prior projects.

Id. In Weeks Marine, this Court rejected such factors as a "weak justification to abandon sealed bidding."

In addition, like past performance, the Corps is required to assess whether the offeror has the necessary equipment to perform the work and to comply with the project performance schedule as part of the responsibility determination when sealed bidding is used. FAR 9.104-1(b), (f). By providing that these two subfactors (like past performance) will be "evaluated" on a pass-fail, acceptable-unacceptable basis, the Corps' proposed evaluation under the RFP is no different than a responsibility determination, and the Corps is in fact basing the award decision on price. Therefore, these subfactors cannot support use of negotiated procurement procedures rather than sealed bidding under the Competition in Contracting Act and the FAR.

The final non price evaluation factor contained in the RFP is the Small Business Participation Plan, which is identified in the RFP as the least important evaluation factor. RFP at p. 9 of 49. Once again, the Corps proposes to evaluate this subfactor as Acceptable or Unacceptable. Id. at 14 of 49. Once again, in requiring an acceptable small business subcontracting plan, the Corps' proposed evaluation is no different than what it already does in determining responsibility in a sealed bid procurement.

FAR 19.702(a) requires that in both negotiated procurements ***and*** in sealed bidding acquisitions, an agency shall require the company selected for award to submit an acceptable subcontracting plan that includes the detailed information set forth in FAR 19.704. If, in a sealed bidding procurement, a bidder does not submit an acceptable plan, it will be found non responsible and ineligible for award. FAR 19.705-4(b). Moreover, FAR 19.705-4(b) explicitly allows the agency to negotiate any plan deficiencies with the bidder before award and

to require the bidder to make changes to the plan in order to be eligible for award. This is precisely what the Corps does when using sealed bid procedures for dredging contracts. The Corps requires the low bidder/proposed awardee to submit a subcontracting plan, negotiates the terms of that plan with the bidder, and awards a contact to that bidder only upon receipt and approval of an acceptable plan.

In addition, GLDD is aware of no reason why the Corps needs to modify this process or to evaluate this subfactor under an RFP when it has successfully used sealed bidding for Charleston Entrance Channel maintenance dredging (and most other dredging projects) for many years. Indeed, the record generated during the Weeks Marine case indicates that there is no such need, as the Court found that the Corps was "already achieving commendable small business results," and that "SAD already was achieving commendable small business goals while employing the sealed bid method for the past two years." Weeks Marine at 18, 23. Therefore, the small business plan subfactor does not provide a rational basis for abandoning sealed bidding for routine maintenance dredging contracts such as the one at issue here, and the Corps' attempted use of RFP procedures is arbitrary and capricious.

As demonstrated above, all of the 10 U.S.C. § 2304(a) and FAR 6.401(a) conditions are satisfied here. Therefore, the applicable statute and applicable FAR provisions mandate that the Corps ***shall*** use FAR Part 14 sealed bidding procedures in this case. The Corps' issuance of this solicitation as an RFP, using FAR Part 15 procedures, is a clear and prejudicial violation of these applicable statutes and regulations that should be enjoined by this Court.

### C. GLDD Is Entitled To Injunctive Relief

To obtain a temporary restraining order ("TRO") or a preliminary injunction, a plaintiff must demonstrate that: (1) it has a likelihood of success on the merits; (2) that it will suffer irreparable harm if an injunction is not granted; (3) that the harm to the plaintiff if an injunction is not granted outweighs the harm to the government if an injunction is granted; and (4) that granting the injunction is in the public interest. See, e.g., Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000) (citations omitted); A&D Fire Prot., Inc. v United States, 72 Fed. Cl. 126, 132 (2006) (citation omitted). No one factor is dispositive as the "weakness of the showing regarding one factor may be overborne by the strength of the others." Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 709 (2006) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)).

GLDD has demonstrated above that it has a high likelihood of success on the merits and satisfies the first prong of this test because the Corps' use of FAR Part 15 procedures here violated both statute and regulations that require the use of sealed bidding in this context. GLDD also will be irreparably harmed if an injunction is not issued here. When assessing irreparable injury, this court often has looked to "whether plaintiff has an adequate remedy in the absence of an injunction." Weeks Marine at 21 (quoting Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993)). Here, GLDD seeks to have the Corps follow the Competition in Contracting Act and applicable regulations and use sealed bidding procedures. As this Court noted in Weeks Marine (at 21), in this situation, a protest against the terms of a solicitation must be brought prior to submission of proposals and "[t]he only remedy that will satisfy [the] protest is for the Court to enter injunctive relief." In addition, this Court repeatedly has held that the denial of the right of a contractor to have an offer fully and ***lawfully*** considered for award also constitutes irreparable injury. Great Lakes, 60 Fed. Cl. at 370; Overstreet Elec. Co. v. United

States, 47 Fed. Cl. 728, 744 n.25 (2000); Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 398 (1999).

The balance of hardships also weighs heavily in favor of granting injunctive relief to GLDD. If no relief is granted, GLDD will suffer the hardship of being forced to participate in an unlawful procurement and will be denied the benefit of competing in a legally valid procurement. See Weeks Marine at 22 (contractors interest in seeing that the Corps complies with the law in soliciting and awarding contracts outweighs the government "hardship" of using sealed bidding when required by law). Moreover, the Government will suffer no harm at all if a TRO or preliminary injunction is granted, as GLDD is agreeable to an expedited schedule that will promptly resolve this case on the merits.

Finally, issuing a TRO or preliminary injunction in this case will serve the public interest. It is well-established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring procurement officials to follow procurement statutes and regulations. Weeks Marine at 22; Great Lakes, 60 Fed. Cl. at 370; United Int'l Investigative Servs., Inc. v United States, 41 Fed. Cl. 312, 323 (1998). Here, the Corps' attempt to use FAR Part 15 procedures violates 10 U.S.C. § 2304(a) and several FAR provisions, and it undermines the integrity of the procurement process. Therefore, issuance of an injunction will serve the public interest.

## IV. CONCLUSION

For all of the reasons set forth above, plaintiff GLDD respectfully requests that the Court grant GLDD's motion and issue a TRO and/or a preliminary injunction to maintain the status quo until the Court reaches a decision on the merits.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902

Attorney of Record for Plaintiff
Great Lakes Dredge & Dock Company LLC

Dated: November 26, 2007