contract to allow use of the foreign construction material. However, when the basis for the exception is the unreasonable price of a domestic construction material, adequate consideration is not less than the differential established in paragraph (b)(3)(i) of this clause.

(3) Unless the Government determines that an exception to the Buy American Act applies, use of foreign construction material is noncompliant with the Buy American Act.

(d) Data. To permit evaluation of requests under paragraph (c) of this clause based on unreasonable cost, the Contractor shall include the following information and any applicable supporting data based on the survey of suppliers:

Foreign and Domestic Construction Materials Price Comparison

| Construction material description | Unit of measure | Quantity | Price (dollars) \1\ |
|---|---|---|---|
| Item 1 | | | |
| Foreign construction material.... | ...................... | ...................... | ...................... |
| Domestic construction material... | ...................... | ...................... | ...................... |
| Item 2 | | | |
| Foreign construction material.... | ...................... | ...................... | ...................... |
| Domestic construction material... | ...................... | ...................... | ...................... |

Include all delivery costs to the construction site and any applicable duty (whether or not a duty-free entry certificate is issued).
List name, address, telephone number, and contact for suppliers surveyed. Attach copy of response; if oral, attach summary.
Include other applicable supporting information.

(End of clause)

52.233-2 SERVICE OF PROTEST (SEP 2006)

(a) Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the Government Accountability Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from

US ARMY CORPS OF ENGINEERS
ATTN: CONTRACTING
69A HAGOOD AVENUE
CHARLESTON SC 29403-5107

(b) The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of provision)

52.236-4011 Disclosure of Magnitude of Construction (FAR 36.204 and DFARS 236.204)

The estimated price range for this project is between

$5 MILLION and $10 MILLION .

52.252-1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998)

This solicitation incorporates one or more solicitation provisions by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The offeror is cautioned that the listed provisions may include blocks that must be completed by the offeror and submitted with its quotation or offer. In lieu of submitting the full text of those provisions, the offeror may identify the provision by paragraph identifier and provide the appropriate information with its quotation or offer. Also, the full text of a solicitation provision may be accessed electronically at this/these address(es):

http://www.arnet.gov/far

(End of provision

52.252-5 AUTHORIZED DEVIATIONS IN PROVISIONS (APR 1984)

(a) The use in this solicitation of any Federal Acquisition Regulation (48 CFR Chapter 1) provision with an authorized deviation is indicated by the addition of"(DEVIATION)" after the date of the provision.

(b) The use in this solicitation of any DFAR (48 CFR Chapter __1__) provision with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

(End of provision)

Section 00600 - Representations & Certifications

LOCAL CLAUSES

52.209-4002 CERTIFICATE OF AUTHORITY TO BIND CORPORATION

Offeror, if a corporation, shall cause the following certificate to be executed under its corporate seal. The same officer shall not sign both the offer and this certificate.

CERTIFICATE

I, ______________________________________________,
(Name)

______________________________________ of the corporation named as Offeror
(Title)

herein, certify that ______________________________________________, who
(Name of person who signed offer)

signed this offer on behalf of the corporation (Offeror), was then ______________________________________ of said corporation, and that said offer was duly signed for and on behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

________________________
(Signature)
(CORPORATE SEAL)

________________________
(Typed Name)

(End of paragraph)

52.219-4005 SUBCONTRACTING REPRESENTATION

(a) Part of the work included in this offer ( ) will, ( ) will not, be subcontracted. Subcontractor ( ) is, ( ) is not, a Small Business Concern as defined in the provision entitled SMALL BUSINESS CONCERN REPRESENTATION.

(b) Part of the work included in this offer ( ) will, ( ) will not, be subcontracted to a Small Disadvantaged Business Concern as defined in the provision entitled SMALL DISADVANTAGED BUSINESS CONCERN REPRESENTATION.

Name and Address of Subcontractor: ____________________________________

________________________________________________________________________

Estimated percentage of work to be subcontracted: ____________________

Type of work to be subcontracted: ____________________________________

________________________________________________________________________

(End of paragraph)

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.203-11 | Certification And Disclosure Regarding Payments To Influence Certain Federal Transactions | SEP 2007 |
| 52.222-38 | Compliance With Veterans' Employment Reporting Requirements | DEC 2001 |
| 52.236-28 | Preparation of Proposals--Construction | OCT 1997 |
| 252.209-7001 | Disclosure of Ownership or Control by the Government of a Terrorist Country | OCT 2006 |
| 252.209-7004 | Subcontracting With Firms That Are Owned or Controlled By The Government of a Terrorist Country | DEC 2006 |
| 252.225-7006 | Quarterly Reporting of Actual Contract Performance Outside the United States | MAY 2007 |
| 252.225-7031 | Secondary Arab Boycott Of Israel | JUN 2005 |

CLAUSES INCORPORATED BY FULL TEXT

52.204-3 TAXPAYER IDENTIFICATION (OCT 1998)

(a) Definitions.

Common parent, as used in this provision, means that corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member.

Taxpayer Identification Number (TIN), as used in this provision, means the number required by the Internal Revenue Service (IRS) to be used by the offeror in reporting income tax and other returns. The TIN may be either a Social Security Number or an Employer Identification Number.

(b) All offerors must submit the information required in paragraphs (d) through (f) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the IRS. If the resulting contract is subject to the payment reporting requirements described in Federal Acquisition Regulation (FAR) 4.904, the failure or refusal by the offeror to furnish the information may result in a 31 percent reduction of payments otherwise due under the contract.

(c) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(d) Taxpayer Identification Number (TIN).

___ TIN:.-------------------------------------------------------

___ TIN has been applied for.

___ TIN is not required because:

___ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States;

___ Offeror is an agency or instrumentality of a foreign government;

___ Offeror is an agency or instrumentality of the Federal Government.

(e) Type of organization.

___ Sole proprietorship;

___ Partnership;

___ Corporate entity (not tax-exempt);

___ Corporate entity (tax-exempt);

___ Government entity (Federal, State, or local);

___ Foreign government;

___ International organization per 26 CFR 1.6049-4;

___ Other--------------------------------------------------------

(f) Common parent.

___ Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.

___ Name and TIN of common parent:

Name--------------------------------------------------------------------

TIN----------------------------------------------------------------------

(End of provision)

52.204-8 ANNUAL REPRESENTATIONS AND CERTIFICATIONS (JAN 2006)

(a)(1) The North American Industry Classification System (NAICS) code for this acquisition is 237990.

(2) The small business size standard is $18.5 MIL.

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b)(1) If the clause at 52.204-7, Central Contractor Registration, is included in this solicitation, paragraph (c) of this provision applies.

(2) If the clause at 52.204-7 is not included in this solicitation, and the offeror is currently registered in CCR, and has completed the ORCA electronically, the offeror may choose to use paragraph (b) of this provision instead of completing the corresponding individual representations and certifications in the solicitation. The offeror shall indicate which option applies by checking one of the following boxes:

(__) Paragraph (c) applies.

(__) Paragraph (c) does not apply and the offeror has completed the individual representations and certifications in the solicitation.

(c) The offeror has completed the annual representations and certifications electronically via the Online Representations and Certifications Application (ORCA) website at http://orca.bpn.gov. After reviewing the ORCA database information, the offeror verifies by submission of the offer that the representations and certifications currently posted electronically have been entered or updated within the last 12 months, are current, accurate, complete, and applicable to this solicitation (including the business size standard applicable to the NAICS code referenced for this solicitation), as of the date of this offer and are incorporated in this offer by reference (see FAR 4.1201); except for the changes identified below [offeror to insert changes, identifying change by clause number, title, date]. These amended representation(s) and/or certification(s) are also incorporated in this offer and are current, accurate, and complete as of the date of this offer.

| FAR Clause | Title | Date | Change |
|---|---|---|---|
| ------ | ---------- | ------ | ------ |

Any changes provided by the offeror are applicable to this solicitation only, and do not result in an update to the representations and certifications posted on ORCA.

(End of Provision)

52.204-4005 Online Representations and Certifications Application (ORCA).

Beginning January 1, 2005, the Federal Acquisition Regulation (FAR) requires the use of ORCA in Federal solicitations as a part of the proposal submission process. ORCA is a web-based system that centralizes and standardizes the collection, storage and viewing of many of the representations and certifications required by the Federal Acquisition Regulations and previously found in solicitations. Prospective contractors must complete the electronic representations and certifications through ORCA at http://orca.bpn.gov. The representations and certifications submitted to ORCA must be updated as necessary but at least annually to maintain an active status. In addition to the use of ORCA as required by other clause or clauses in this solicitation, prospective contractors must complete the representations and certifications included in this solicitation.

52.209-5 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (DEC 2001)

(a)(1) The Offeror certifies, to the best of its knowledge and belief, that-

(i) The Offeror and/or any of its Principals-

(A) Are ( ) are not ( ) presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

(B) Have ( ) have not ( ), within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(C) Are ( ) are not ( ) presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in paragraph (a)(1)(i)(B) of this provision.

(ii) The Offeror has ( ) has not ( ), within a three-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

(2) "Principals," for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a subsidiary, division, or business segment, and similar positions).

This Certification Concerns a Matter Within the Jurisdiction of an Agency of the United States and the Making of a False, Fictitious, or Fraudulent Certification May Render the Maker Subject to Prosecution Under Section 1001, Title 18, United States Code.

(b) The Offeror shall provide immediate written notice to the Contracting Officer if, at any time prior to contract award, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c) A certification that any of the items in paragraph (a) of this provision exists will not necessarily result in withholding of an award under this solicitation. However, the certification will be considered in connection with a determination of the Offeror's responsibility. Failure of the Offeror to furnish a certification or provide such additional information as requested by the Contracting Officer may render the Offeror nonresponsible.

(d) Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render, in good faith, the certification required by paragraph (a) of this provision. The knowledge and information of an Offeror is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

(e) The certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.

(End of provision)

52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

The offeror represents that --

(a) ( ) It has, ( ) has not participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation;

(b) ( ) It has, ( ) has not, filed all required compliance reports; and

(c) Representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

(End of provision)

52.222-25 AFFIRMATIVE ACTION COMPLIANCE (APR 1984)

The offeror represents that

(a) [ ] it has developed and has on file, [ ] has not developed and does not have on file, at each establishment, affirmative action programs required by the rules and regulations of the Secretary of Labor (41 CFR 60-1 and 60-2), or

(b) [ ] has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

(End of provision)

52.223-13 CERTIFICATION OF TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

(a) Executive Order 13148, of April 21, 2000, Greening the Government through Leadership in Environmental Management, requires submission of this certification as a prerequisite for contract award.

(b) By signing this offer, the offeror certifies that--

(1) As the owner or operator of facilities that will be used in the performance of this contract that are subject to the filing and reporting requirements described in section 313 of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) (42 U.S.C. 11023) and section 6607 of the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13106), the offeror will file and continue to file for such facilities for the life of the contract the Toxic Chemical Release Inventory Form (Form R) as described in sections 313(a) and (g) of EPCRA and section 6607 of PPA; or

(2) None of its owned or operated facilities to be used in the performance of this contract is subject to the Form R filing and reporting requirements because each such facility is exempt for at least one of the following reasons: (Check each block that is applicable.)

( ) (i) The facility does not manufacture, process, or otherwise use any toxic chemicals listed in 40 CFR 372.65;

( ) (ii) The facility does not have 10 or more full-time employees as specified in section 313.(b)(1)(A) of EPCRA 42 U.S.C. 11023(b)(1)(A);

( ) (iii) The facility does not meet the reporting thresholds of toxic chemicals established under section 313(f) of EPCRA, 42 U.S.C. 11023(f) (including the alternate thresholds at 40 CFR 372.27, provided an appropriate certification form has been filed with EPA);

( ) (iv) The facility does not fall within the following Standard Industrial Classification (SIC) codes or their corresponding North American Industry Classification System sectors:

(A) Major group code 10 (except 1011, 1081, and 1094.

(B) Major group code 12 (except 1241).

(C) Major group codes 20 through 39.

(D) Industry code 4911, 4931, or 4939 (limited to facilities that combust coal and/or oil for the purpose of generating power for distribution in commerce).

(E) Industry code 4953 (limited to facilities regulated under the Resource Conservation and Recovery Act, Subtitle C (42 U.S.C. 6921, et seq.), 5169, 5171, or 7389 (limited to facilities primarily engaged in solvent recovery services on a contract or fee basis); or

( ) (v) The facility is not located within the United States or its outlying areas.

(End of clause)

252.209-7002 DISCLOSURE OF OWNERSHIP OR CONTROL BY A FOREIGN GOVERNMENT (JUN 2005)

(a) Definitions. As used in this provision--

(1) "Effectively owned or controlled" means that a foreign government or any entity controlled by a foreign government has the power, either directly or indirectly, whether exercised or exercisable, to control the election, appointment, or tenure of the Offeror's officers or a majority of the Offeror's board of directors by any means, e.g., ownership, contract, or operation of law (or equivalent power for unincorporated organizations).

(2) "Entity controlled by a foreign government"—

(i) Means—

(A) Any domestic or foreign organization or corporation that is effectively owned or controlled by a foreign government; or

(B) Any individual acting on behalf of a foreign government.

(ii) Does not include an organization or corporation that is owned, but is not controlled, either directly or indirectly, by a foreign government if the ownership of that organization or corporation by that foreign government was effective before October 23, 1992.

(3) "Foreign government" includes the state and the government of any country (other than the United States and its outlying areas) as well as any political subdivision, agency, or instrumentality thereof.

(4) "Proscribed information" means—

(i) Top Secret information;

(ii) Communications Security (COMSEC) information, except classified keys used to operate secure telephone units (STU IIIs);

(iii) Restricted Data as defined in the U.S. Atomic Energy Act of 1954, as amended;

(iv) Special Access Program (SAP) information; or

(v) Sensitive Compartmented Information (SCI).

(b) *Prohibition on award.* No contract under a national security program may be awarded to an entity controlled by a foreign government if that entity requires access to proscribed information to perform the contract, unless the Secretary of Defense or a designee has waived application of 10 U.S.C. 2536(a).

(c) *Disclosure.* The Offeror shall disclose any interest a foreign government has in the Offeror when that interest constitutes control by a foreign government as defined in this provision. If the Offeror is a subsidiary, it shall also disclose any reportable interest a foreign government has in any entity that owns or controls the subsidiary, including reportable interest concerning the Offeror's immediate parent, intermediate parents, and the ultimate parent. Use separate paper as needed, and provide the information in the following format:

Offeror's Point of Contact for Questions about Disclosure (Name and Phone Number with Country Code, City Code and Area Code, as applicable)

Name and Address of Offeror

| Name and Address of Entity Controlled by a Foreign Government | Description of Interest, Ownership Percentage, and Identification of Foreign Government |
|---|---|

(End of provision)

252.247-7022 REPRESENTATION OF EXTENT OF TRANSPORTATION BY SEA (AUG 1992)

(a) The Offeror shall indicate by checking the appropriate blank in paragraph (b) of this provision whether transportation of supplies by sea is anticipated under the resultant contract. The term supplies is defined in the Transportation of Supplies by Sea clause of this solicitation.

(b) Representation. The Offeror represents that it:

____ (1) Does anticipate that supplies will be transported by sea in the performance of any contract or subcontract resulting from this solicitation.

____ (2) Does not anticipate that supplies will be transported by sea in the performance of any contract or subcontract resulting from this solicitation.

(c) Any contract resulting from this solicitation will include the Transportation of Supplies by Sea clause. If the Offeror represents that it will not use ocean transportation, the resulting contract will also include the Defense FAR Supplement clause at 252.247-7024, Notification of Transportation of Supplies by Sea.

(End of provision)

Section 00700 - Contract Clauses

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.202-1 | Definitions | JUL 2004 |
| 52.203-3 | Gratuities | APR 1984 |
| 52.203-5 | Covenant Against Contingent Fees | APR 1984 |
| 52.203-6 | Restrictions On Subcontractor Sales To The Government | SEP 2006 |
| 52.203-7 | Anti-Kickback Procedures | JUL 1995 |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity | JAN 1997 |
| 52.203-10 | Price Or Fee Adjustment For Illegal Or Improper Activity | JAN 1997 |
| 52.203-12 | Limitation On Payments To Influence Certain Federal Transactions | SEP 2007 |
| 52.204-4 | Printed or Copied Double-Sided on Recycled Paper | AUG 2000 |
| 52.204-7 | Central Contractor Registration | JUL 2006 |
| 52.209-6 | Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for Debarment | SEP 2006 |
| 52.211-13 | Time Extensions | SEP 2000 |
| 52.219-8 | Utilization of Small Business Concerns | MAY 2004 |
| 52.219-9 | Small Business Subcontracting Plan | SEP 2007 |
| 52.222-1 | Notice To The Government Of Labor Disputes | FEB 1997 |
| 52.222-3 | Convict Labor | JUN 2003 |
| 52.222-4 | Contract Work Hours and Safety Standards Act - Overtime Compensation | JUL 2005 |
| 52.222-6 | Davis Bacon Act | JUL 2005 |
| 52.222-7 | Withholding of Funds | FEB 1988 |
| 52.222-8 | Payrolls and Basic Records | FEB 1988 |
| 52.222-9 | Apprentices and Trainees | JUL 2005 |
| 52.222-10 | Compliance with Copeland Act Requirements | FEB 1988 |
| 52.222-12 | Contract Termination-Debarment | FEB 1988 |
| 52.222-13 | Compliance with Davis-Bacon and Related Act Regulations. | FEB 1988 |
| 52.222-14 | Disputes Concerning Labor Standards | FEB 1988 |
| 52.222-15 | Certification of Eligibility | FEB 1988 |
| 52.222-21 | Prohibition Of Segregated Facilities | FEB 1999 |
| 52.222-26 | Equal Opportunity | MAR 2007 |
| 52.222-27 | Affirmative Action Compliance Requirements for Construction | FEB 1999 |
| 52.222-35 | Equal Opportunity For Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans | SEP 2006 |
| 52.222-36 | Affirmative Action For Workers With Disabilities | JUN 1998 |
| 52.222-37 | Employment Reports On Special Disabled Veterans, Veterans Of The Vietnam Era, and Other Eligible Veterans | SEP 2006 |
| 52.222-39 | Notification of Employee Rights Concerning Payment of Union Dues or Fees | DEC 2004 |
| 52.223-3 | Hazardous Material Identification And Material Safety Data | JAN 1997 |
| 52.223-5 | Pollution Prevention and Right-to-Know Information | AUG 2003 |
| 52.223-6 | Drug-Free Workplace | MAY 2001 |
| 52.223-14 | Toxic Chemical Release Reporting | AUG 2003 |
| 52.225-13 | Restrictions on Certain Foreign Purchases | FEB 2006 |
| 52.227-1 | Authorization and Consent | JUL 1995 |
| 52.228-2 | Additional Bond Security | OCT 1997 |

| | | |
|---|---|---|
| 52.228-5 | Insurance - Work On A Government Installation | JAN 1997 |
| 52.228-11 | Pledges Of Assets | FEB 1992 |
| 52.228-12 | Prospective Subcontractor Requests for Bonds | OCT 1995 |
| 52.228-15 | Performance and Payment Bonds--Construction | NOV 2006 |
| 52.229-3 | Federal, State And Local Taxes | APR 2003 |
| 52.232-5 | Payments under Fixed-Price Construction Contracts | SEP 2002 |
| 52.232-17 | Interest | JUN 1996 |
| 52.232-23 | Assignment Of Claims | JAN 1986 |
| 52.232-27 | Prompt Payment for Construction Contracts | SEP 2005 |
| 52.232-33 | Payment by Electronic Funds Transfer--Central Contractor Registration | OCT 2003 |
| 52.233-1 | Disputes | JUL 2002 |
| 52.233-3 | Protest After Award | AUG 1996 |
| 52.233-4 | Applicable Law for Breach of Contract Claim | OCT 2004 |
| 52.236-2 | Differing Site Conditions | APR 1984 |
| 52.236-3 | Site Investigation and Conditions Affecting the Work | APR 1984 |
| 52.236-5 | Material and Workmanship | APR 1984 |
| 52.236-6 | Superintendence by the Contractor | APR 1984 |
| 52.236-7 | Permits and Responsibilities | NOV 1991 |
| 52.236-8 | Other Contracts | APR 1984 |
| 52.236-9 | Protection of Existing Vegetation, Structures, Equipment, Utilities, and Improvements | APR 1984 |
| 52.236-10 | Operations and Storage Areas | APR 1984 |
| 52.236-11 | Use and Possession Prior to Completion | APR 1984 |
| 52.236-12 | Cleaning Up | APR 1984 |
| 52.236-13 | Accident Prevention | NOV 1991 |
| 52.236-14 | Availability and Use of Utility Services | APR 1984 |
| 52.236-16 | Quantity Surveys | APR 1984 |
| 52.236-21 | Specifications and Drawings for Construction | FEB 1997 |
| 52.236-26 | Preconstruction Conference | FEB 1995 |
| 52.242-13 | Bankruptcy | JUL 1995 |
| 52.242-14 | Suspension of Work | APR 1984 |
| 52.243-4 | Changes | JUN 2007 |
| 52.243-5 | Changes and Changed Conditions | APR 1984 |
| 52.244-5 | Competition In Subcontracting | DEC 1996 |
| 52.246-12 | Inspection of Construction | AUG 1996 |
| 52.248-3 | Value Engineering-Construction | SEP 2006 |
| 52.249-2 Alt I | Termination for Convenience of the Government (Fixed-Price) (May 2004) - Alternate I | SEP 1996 |
| 52.249-10 | Default (Fixed-Price Construction) | APR 1984 |
| 52.253-1 | Computer Generated Forms | JAN 1991 |
| 252.201-7000 | Contracting Officer's Representative | DEC 1991 |
| 252.203-7001 | Prohibition On Persons Convicted of Fraud or Other Defense-Contract-Related Felonies | DEC 2004 |
| 252.203-7002 | Display Of DOD Hotline Poster | DEC 1991 |
| 252.204-7003 | Control Of Government Personnel Work Product | APR 1992 |
| 252.204-7004 Alt A | Central Contractor Registration (52.204-7) Alternate A | SEP 2007 |
| 252.204-7006 | Billing Instructions | OCT 2005 |
| 252.205-7000 | Provision Of Information To Cooperative Agreement Holders | DEC 1991 |
| 252.209-7004 | Subcontracting With Firms That Are Owned or Controlled By The Government of a Terrorist Country | DEC 2006 |
| 252.223-7001 | Hazard Warning Labels | DEC 1991 |
| 252.223-7004 | Drug Free Work Force | SEP 1988 |

| | | |
|---|---|---|
| 252.223-7006 | Prohibition On Storage And Disposal Of Toxic And Hazardous Materials | APR 1993 |
| 252.225-7012 | Preference For Certain Domestic Commodities | JAN 2007 |
| 252.232-7003 | Electronic Submission of Payment Requests | MAR 2007 |
| 252.236-7000 | Modification Proposals-Price Breakdown | DEC 1991 |
| 252.236-7002 | Obstruction of Navigable Waterways | DEC 1991 |
| 252.242-7000 | POST AWARD CONFERENCE | MAY 2007 |
| 252.243-7001 | Pricing Of Contract Modifications | DEC 1991 |
| 252.243-7002 | Requests for Equitable Adjustment | MAR 1998 |
| 252.247-7023 | Transportation of Supplies by Sea | MAY 2002 |
| 252.247-7024 | Notification Of Transportation Of Supplies By Sea | MAR 2000 |

CLAUSES INCORPORATED BY FULL TEXT

52.225-9 BUY AMERICAN ACT—CONSTRUCTION MATERIALS (JAN 2005)

(a) Definitions. As used in this clause--

Component means an article, material, or supply incorporated directly into a construction material.

Construction material means an article, material, or supply brought to the construction site by the Contractor or a subcontractor for incorporation into the building or work. The term also includes an item brought to the site preassembled from articles, materials, or supplies. However, emergency life safety systems, such as emergency lighting, fire alarm, and audio evacuation systems, that are discrete systems incorporated into a public building or work and that are produced as complete systems, are evaluated as a single and distinct construction material regardless of when or how the individual parts or components of those systems are delivered to the construction site. Materials purchased directly by the Government are supplies, not construction material.

Cost of components means--

(1) For components purchased by the Contractor, the acquisition cost, including transportation costs to the place of incorporation into the construction material (whether or not such costs are paid to a domestic firm), and any applicable duty (whether or not a duty-free entry certificate is issued); or

(2) For components manufactured by the Contractor, all costs associated with the manufacture of the component, including transportation costs as described in paragraph (1) of this definition, plus allocable overhead costs, but excluding profit. Cost of components does not include any costs associated with the manufacture of the construction material.

Domestic construction material means--

(1) An unmanufactured construction material mined or produced in the United States; or

(2) A construction material manufactured in the United States, if the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. Components of foreign origin of the same class or kind for which nonavailability determinations have been made are treated as domestic.

Foreign construction material means a construction material other than a domestic construction material.

United States means the 50 States, the District of Columbia, and outlying areas.

(b) Domestic preference. (1) This clause implements the Buy American Act (41 U.S.C. 10a-10d) by providing a preference for domestic construction material. The Contractor shall use only domestic construction material in performing this contract, except as provided in paragraphs (b)(2) and (b)(3) of this clause.

(2) This requirement does not apply to the construction material or components listed by the Government as follows: [Contracting Officer to list applicable excepted materials or indicate "none"]

(3) The Contracting Officer may add other foreign construction material to the list in paragraph (b)(2) of this clause if the Government determines that

(i) The cost of domestic construction material would be unreasonable. The cost of a particular domestic construction material subject to the requirements of the Buy American Act is unreasonable when the cost of such material exceeds the cost of foreign material by more than 6 percent;

(ii) The application of the restriction of the Buy American Act to a particular construction material would be impracticable or inconsistent with the public interest; or

(iii) The construction material is not mined, produced, or manufactured in the United States in sufficient and reasonably available commercial quantities of a satisfactory quality.

(c) Request for determination of inapplicability of the Buy American Act. (1)(i) Any Contractor request to use foreign construction material in accordance with paragraph (b)(3) of this clause shall include adequate information for Government evaluation of the request, including--

(A) A description of the foreign and domestic construction materials;

(B) Unit of measure;

(C) Quantity;

(D) Price;

(E) Time of delivery or availability;

(F) Location of the construction project;

(G) Name and address of the proposed supplier; and

(H) A detailed justification of the reason for use of foreign construction materials cited in accordance with paragraph (b)(3) of this clause.

(ii) A request based on unreasonable cost shall include a reasonable survey of the market and a completed price comparison table in the format in paragraph (d) of this clause.

(iii) The price of construction material shall include all delivery costs to the construction site and any applicable duty (whether or not a duty-free certificate may be issued).

(iv) Any Contractor request for a determination submitted after contract award shall explain why the Contractor could not reasonably foresee the need for such determination and could not have requested the determination before contract award. If the Contractor does not submit a satisfactory explanation, the Contracting Officer need not make a determination.

(2) If the Government determines after contract award that an exception to the Buy American Act applies and the Contracting Officer and the Contractor negotiate adequate consideration, the Contracting Officer will modify the

contract to allow use of the foreign construction material. However, when the basis for the exception is the unreasonable price of a domestic construction material, adequate consideration is not less than the differential established in paragraph (b)(3)(i) of this clause.

(3) Unless the Government determines that an exception to the Buy American Act applies, use of foreign construction material is noncompliant with the Buy American Act.

(d) Data. To permit evaluation of requests under paragraph (c) of this clause based on unreasonable cost, the Contractor shall include the following information and any applicable supporting data based on the survey of suppliers:

Foreign and Domestic Construction Materials Price Comparison

| Construction material description | Unit of measure | Quantity | Price (dollars) \1\ |
|---|---|---|---|
| Item 1 | | | |
| Foreign construction material.... | ...................... | ...................... | ...................... |
| Domestic construction material... | ...................... | ...................... | ...................... |
| Item 2 | | | |
| Foreign construction material.... | ...................... | ...................... | ...................... |
| Domestic construction material... | ...................... | ...................... | ...................... |

Include all delivery costs to the construction site and any applicable duty (whether or not a duty-free entry certificate is issued).
List name, address, telephone number, and contact for suppliers surveyed. Attach copy of response; if oral, attach summary.
Include other applicable supporting information.

(End of clause)

52.228-1 BID GUARANTEE (SEP 1996)

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.-

(c) The amount of the bid guarantee shall be 20 percent of the bid price or $3 Million,. whichever is less.-

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.-

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

(End of clause)

52.236-1 PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization, work equivalent to at least 40 percent of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performing the work, the Contractor requests a reduction and the Contracting Officer determines that the reduction would be to the advantage of the Government.

(End of clause)

52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.arnet.gov/far

(End of clause)

52.252-6 AUTHORIZED DEVIATIONS IN CLAUSES (APR 1984)

(a) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the clause.

(b) The use in this solicitation or contract of any Defense Federal Acquisition Regulation DFAR (48 CFR Chapter 2) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

(End of clause)

Section 00800 - Special Contract Requirements

LOCAL CLAUSES
CLAUSES INCORPORATED BY FULL TEXT

52.200-4803 ADMINISTRATIVE, APPROPRIATION, AND ACCOUNTING DATA

(a) Partial payments will be made monthly for the amount and value of the work and services performed upon submission of ENG Form 93, "Payment Estimate-Contract Performance". This estimate will be forwarded to and verified by the Contracting Officer's Representative utilizing the progress report submitted by the Contractor and independent analyses of progress. Sample format for ENG Form 93 will be provided to the Contractor by the Contracting officer's Representative upon contract award.

(b) Submit requests for payment (Original and one copy) to:

U.S. Army Corps of Engineers, Charleston
Attn: CESAC-TS-OL
1050 Remount Road, Bldg 3555
North Charleston, SC 29406

(c) Payments will be made by:

USACE Finance Center (EROC: K2)
Attn: CEFC-AO-P
5720 Integrity Drive
Millington, TN 38054

(End of paragraph)

52.201-4700 CONTRACTING OFFICER'S REPRESENTATIVE (COR)
ADMINISTRATIVE CONTRACTING OFFICER (ACO)
ORDERING OFFICER

(a) Definitions.

(i) "Contracting Officer's Representative" (COR) means an individual designated in accordance with subsection 201.602-2 of the Defense Federal Acquisition Regulation Supplement and authorized in writing by the Contracting Officer to perform specific technical or administrative functions. The COR is not authorized to make any commitments or changes that will affect price, quality, quantity, delivery, or any other term or condition of the contract.

(ii) "Administrative Contracting Officer" (ACO) means an individual designated in accordance with subsections 1.602-1(100) and 1.603-3(100) of the Engineer Federal Acquisition Regulation Supplement and authorized in writing by the Contracting Officer to perform specific functions. The ACO is authorized to modify construction contracts within the scope of the contract under specified contract clauses.

(iii) "Ordering Officer" means an individual designated in accordance with subsection 1.603-1 of the Army Federal Acquisition Regulation Supplement and authorized in writing by the Chief of the Contracting Division to place orders against specific indefinite delivery type contracts.

(b) If a COR, ACO, or Ordering Officer is designated, the Contractor will receive a copy of the written designation. Each will specify the extent of the authority of the COR, ACO, or Ordering Officer to act on behalf of the Government.

(c) The Contractor shall not accept any instructions issued by any person employed by the Government, or otherwise, other than the Contracting Officer; or COR, ACO or Ordering Officer acting within their authority.

(End of paragraph)

<u>FAR 52.236-0004</u> PHYSICAL DATA (APR 84)

Data and information furnished or referred to below is for the Contractor's information. The Government shall not be responsible for any interpretation of or conclusion drawn from the data or information by the Contractor.

(a) The physical conditions indicated on the drawings and in the specifications are the results of surveys performed for the Charleston District, Corps of Engineers and site investigations performed by Charleston District personnel.

(b) Weather conditions, transportation facilities and other pertinent information may be found in Technical Provisions, Section 01100, General, PHYSICAL CONDITIONS AND DATA.

(End of Provision)

52.211-4001 VARIATION IN ESTIMATED QUANTITY – DREDGING

Where the quantity of a pay item in this contract is an estimated quantity and where the actual quantity of material within the dredging prism varies more than fifteen percent (15%) above or below the stated estimated quantity within the dredging prism, an equitable adjustment in the contract price will be made upon demand of either party. The equitable adjustment will be based upon any increase or decrease in costs due solely to the variations above one hundred fifteen percent (115%) or below eighty-five percent (85%) of the estimated quantity within the dredging prism. No consideration for an adjustment in the contract unit price will be given for any variation in quantities of material below the dredging prism or outside the associated side slope lines; such quantities will not be subject to any adjusted unit price. The dredging prism shall be defined as the area down to the required depth and the associated side slopes as specified on the contract drawings. The dredging prism **<u>does not</u>** include the allowable overdepth and the associated side slopes.

(End of clause)

52.211-4004 (c ) COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK and SUPPLEMENTAL INSTRUCTIONS

The Contractor shall be required to (a) commence work under this contract **<u>(See supplemental instructions below)</u>**, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than **<u>31 March 2008 (See supplemental instructions below)</u>**. The time stated for completion shall include final cleanup of the premises.

(End of Clause)

Supplemental Instructions:

For bidding purposes, the dredging work required in Charleston Entrance Channel shall be performed in its entirety, including cleanup and demobilization between **15 December 2007 and 31 March 2008**; and the dredging work required in Georgetown Entrance Channel shall be performed in its entirety, including cleanup and demobilization between **1 December 2007 and 31 March 2008**.

The Contractor shall provide the Government a schedule not later than 10 calendar days after date of contract award depicting, at a minimum, the following information.

- Date mobilization is to commence
- Date dredging shall begin
- Duration of dredging (must at least meet specified minimums)
- Date dredging is to be completed
- Anticipated schedule of earnings

Once this schedule is approved, it will be incorporated into the contract by a no cost modification and become the performance period for the contract. Liquidated damages will be assessed for every day work continues beyond this incorporated scheduled completion date (as adjusted for excusable delays as allowed per other provisions within the contract).

In conjunction with the above, the Contractor shall comply with the clause, LIQUIDATED DAMAGES - CONSTRUCTION found in SPECIAL CONTRACT REQUIREMENTS, Section 00800

(End of supplemental instructions)

52.228-4001 REQUIRED INSURANCE

In accordance with the clause "INSURANCE - WORK ON A GOVERNMENT INSTALLATION" the following Schedule applies:

(a) Workmen's Compensation and Employer's Liability.

(1) Compliance with applicable workmen's compensation and occupational diseases statutes is required. (If occupational diseases are not compensable under applicable statutes, coverage may be under employer's liability insurance.)

(2) Employer's liability $100,000.00

(b) General Liability (comprehensive form policy).

(1) Bodily injury per occurrence $500,000.00

(c) Automobile Liability (comprehensive form policy).

(1) Bodily injury per person $200,000.00

(2) Bodily injury per accident $500,000.00

(3) Property damage per accident $ 20,000.00

The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the Government's interest shall not be effective until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer.

(End of paragraph)

52.231-4500 EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (MAR 1995)

(a) This statement shall become operative only for negotiated contracts where cost or pricing data is requested, and for modifications to sealed bid or negotiated contracts where cost or pricing data is requested. This clause does not apply to terminations. See 52.231-5001, Basis for settlement of proposals, and FAR Part 49.

(b) Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region III. Working conditions shall be considered to be average for determining equipment rates using the schedule unless specified otherwise by the contracting officer. For equipment not included in the schedule, rates for comparable pieces of equipment may be used or a rate may be developed using the formula provided in the schedule. For forward pricing, the schedule in effect at the time of negotiations shall apply. For retroactive pricing, the schedule in effect at the time work was performed shall apply.

(c) Equipment rental costs are allowable, subject to the provisions of FAR 31.105(d)(ii) and 31.205-36. Rates for equipment rented from an organization under common control, lease-purchase arrangements, and sale-leaseback arrangements, will be determined using the schedule, except that actual rates will be used for equipment leased from an organization under common control that has an established practice of leasing the same or similar equipment to unaffiliated lessees.

(d) When actual equipment costs are proposed and the total amount of the pricing action exceeds the small purchase threshold, the contracting officer shall request the contractor to submit either certified cost or pricing data, or partial/limited data, as appropriate. The data shall be submitted on Standard Form 1411, Contract Pricing Proposal Cover Sheet.

(End of clause)

52.232-4001 RELEASE OF CLAIMS - - CONSTRUCTION

The following is an example of a Contractor's release of claims required of the Contractor to comply with the provisions of clause "PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS".

(Sample)

RELEASE OF CLAIMS

The undersigned Contractor under Contract Number__________________ dated ___________, 19___, between the United States of America and said Contractor for the ___________________________________located at ____________________in accordance with Section I, "PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS" FAR clause 52.232-0005, of said Contract, hereby releases the United States, its officers, agents, and employees from any and all claims arising under or by virtue of said contract or any modification or change thereof except with respect to those claims, if any, listed below:

(Here itemize claims and amounts due)

__________________________

(Contractor signature)

__________________________

(Typed name and title)

__________________________

(Date)

(End of paragraph)

(a) ACKNOWLEDGEMENT OF NOTICE TO PROCEED (CESAC-CT)

Date of the Acknowledgement of Notice to Proceed will be the same date the Notice to Proceed was delivered to the Contractor or his representative. Delivery of the Notice to Proceed may be electronic, as with an email or fax, or in hardcopy through the mail or personal delivery. Confirmation of delivery can be made by telephone, electronic means (return fax, return email, etc.), mail or personal delivery. If receipt is not acknowledged by the contractor or cannot be established through other means, the date of acknowledgement will be seven (7) calendar days after the date of issue of the Notice to Proceed by the Contracting Officer.

(End of paragraph)

52.249-4500 BASIS FOR SETTLEMENT OF PROPOSALS (MAY 1995)

"Actual costs will be used to determine equipment costs for a settlement proposal submitted on the total cost basis under FAR 49.206-2(b). In evaluating a terminations settlement proposal using the total cost basis, the following principals will be applied to determine allowable equipment costs:

(1) Actual costs for each piece of equipment, or groups of similar serial or series equipment, need not be available in the contractor's accounting records to determine total actual equipment costs.

(2) If equipment costs have been allocated to a contract using predetermined rates, those charges will be adjusted to actual costs.

(3) Recorded job costs adjusted for unallowable and unallowable expenses will be used to determine equipment operating expenses.

(4) Ownership costs (depreciation) will be determined using the contractor's depreciation schedule (subject to the provisisons of FAR 31.205-11).

(5) License, taxes, storage and insurance costs are normally recovered as an indirect expense and unless the contractor charges these costs directly to contracts they will be recovered through the indirect expense rate.

(End of clause)

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.219-16 | Liquidated Damages-Subcontracting Plan | JAN 1999 |
| 52.223-4002 | U .S. ARMY CORPS OF ENGINEERS SAFETY AND HEALTH MANUAL, EM 385-1-1 | JAN 2001 |
| 252.236-7001 | Contract Drawings, and Specifications | AUG 2000 |

CLAUSES INCORPORATED BY FULL TEXT

52.211-12 LIQUIDATED DAMAGES--CONSTRUCTION (SEP 2000)

(a) If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of $ 990.00 for each calendar day of delay until the work is completed or accepted.

(b) If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.

(End of clause)

252.236-7004 PAYMENT FOR MOBILIZATION AND DEMOBILIZATION (DEC 1991)

(a) The Government will pay all costs for the mobilization and demobilization of all of the Contractor's plant and equipment at the contract lump sum price for this item.

(1) 60 percent of the lump sum price upon completion of the contractor's mobilization at the work site.

(2) The remaining 40 percent upon completion of demobilization.

(b) The Contracting Officer may require the Contractor to furnish cost data to justify this portion of the bid if the Contracting Officer believes that the percentages in paragraphs (a) (1) and (2) of this clause do not bear a reasonable relation to the cost of the work in this contract.

(1) Failure to justify such price to the satisfaction of the Contracting Officer will result in payment, as determined by the Contracting Officer, of --

(i) Actual mobilization costs at completion of mobilization;

(ii) Actual demobilization costs at completion of demobilization; and

(iii) The remainder of this item in the final payment under this contract.

(2) The Contracting Officer's determination of the actual costs in paragraph (b)(1) of this clause is not subject to appeal.

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | |
|---|---|
| 1. CONTRACT ID CODE | J |
| PAGE OF PAGES | 1 / 2 |
| 2. AMENDMENT/MODIFICATION NO. | 0001 |
| 3. EFFECTIVE DATE | 30-Oct-2007 |
| 4. REQUISITION/PURCHASE REQ. NO. | |
| 5. PROJECT NO.(If applicable) | |
| 6. ISSUED BY CODE | W912HN |
| | U.S. ARMY ENGINEER DISTRICT SAVANNAH<br>CHARLESTON CONTRACTING OFFICE<br>69A HAGOOD AVENUE<br>CHARLESTON SC 29403-5107 |
| 7. ADMINISTERED BY (If other than item 6) CODE | See Item 6 |
| 8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code) | |
| CODE | |
| FACILITY CODE | |
| X 9A. AMENDMENT OF SOLICITATION NO. | W912HN-07-R-0109 |
| X 9B. DATED (SEE ITEM 11) | 29-Oct-2007 |
| 10A. MOD. OF CONTRACT/ORDER NO. | |
| 10B. DATED (SEE ITEM 13) | |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [X] is extended, [ ] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

[ ] A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

[ ] B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

[ ] C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

[ ] D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Maintenance Dredging in Charleston Harbor Entrance Channel Charleston County South Carolina and Georgetown Entrace Channel, Georgetown Harbor, Georgetown County South Carolina

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | |
|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) | |
| 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | TEL: EMAIL: |
| 15B. CONTRACTOR/OFFEROR | (Signature of person authorized to sign) |
| 15C. DATE SIGNED | |
| 16B. UNITED STATES OF AMERICA | BY ______ (Signature of Contracting Officer) |
| 16C. DATE SIGNED | 30-Oct-2007 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**The following items are applicable to this modification:**
SUMMARY OF CHANGES
The purpose of this amendment is to:

a. Change the solicitation issue date from 22 Oct 2007 to 29 Oct 2007 and the due date from 22 Oct 2008 to 29 Nov 2007 at 4 p.m.
b. Add the constraint "ESTIMATED" to contract line items 0002 and 0008.
c. Add the following sentence to the end of the paragraph titled "Past Performance Evaluation" on page 12, "Offerors must submit at least two past performance references with at least an acceptable rating.
d. Remove the last sentence from page 12. The sentence to be remove is, "Note: The following definitions apply to the Source Selection Evaluation Team only. Do not issue with the RFP."

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. CONTRACT ID CODE: J | PAGE OF PAGES: 1 / 5 |
|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0002 | 15-Nov-2007 | | |

| 6. ISSUED BY CODE W912HN | 7. ADMINISTERED BY (If other than item 6) CODE |
|---|---|
| U.S. ARMY ENGINEER DISTRICT SAVANNAH<br>CHARLESTON CONTRACTING OFFICE<br>69A HAGOOD AVENUE<br>CHARLESTON SC 29403-5107 | See Item 6 |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code) | | |
|---|---|---|
| | X | 9A. AMENDMENT OF SOLICITATION NO. W912HN-07-R-0109 |
| | X | 9B. DATED (SEE ITEM 11) 29-Oct-2007 |
| | | 10A. MOD. OF CONTRACT/ORDER NO. |
| CODE / FACILITY CODE | | 10B. DATED (SEE ITEM 13) |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [ ] is extended, [X] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

[ ] A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

[ ] B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

[ ] C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

[ ] D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [X] is not, [ ] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Charleston Harbor Entrance Channel Dredging

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>TEL: EMAIL: | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br><br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>16-Nov-2007 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

**SUMMARY OF CHANGES**

The purpose of this amendment is to:

a. Post Questions and Answers # 1, See attachment # 1.

b. Add attachment #1, Questions and Answers #1, dated 15 Nov 2007, three pages to the solicitation.

c. Change the Magnitude of Work to $1 Million and $4 Million.

d. Remove all references to Georgetown Entrance Channel Maintenance Dredging from the solicitation in it's entirety.

e. Page five and six, Delete Contract Line Items (CLINS) 0007 through 0012; these CLINS pertain to Georgetown.

f. Page 28, Far Clause 52.236-4011 Disclosure of Magnitude of Construction (FAR 36.204 and DFARS 236.204) change the magnitude from "$5 Million to $10 Million" to "$1 Million to $4 Million"

**SOLICITATION # W912HN-07-R-0109**
Maintenance Dredging Charleston Harbor Entrance Channel

**QUESTION # 1**
Section 00100B paragraph 2 discusses references used for evaluation purposes and states "The dredge used in the projects shall be for the same dredge being proposed in this solicitation."

We intend to propose at least one dredge for the project and will submit references for projects using this dredge and/or her equivalent sister ships. Please confirm that this would be acceptable.

**ANSWER**
Yes

Question #2: Below, are cutouts from Section 02325 and the Contract Drawings. Does the Allowable Overdepth calculation include overdepth material adjacent to the Grade contour line and within the Contract Limit hatch?

1.4.1 Estimated Quantities

The total estimated quantity of material necessary to be removed from within the specified limits to complete the work are as follows:

ESTIMATED QUANTITIES

| LOCATION | REQUIRED DEPTH AND ASSOCIATED SIDE SLOPES C.Y. * | ALLOWABLE OVERDEPTH AND ASSOCIATED SIDE SLOPES C.Y. ** | TOTAL QUANTITES C.Y. |
|---|---|---|---|
| Charleston Entrance Channel | | | |
| Sta. -290+00 | 486,000 | 465,000 | 951,000 |

Does the Allowable Overdepth Calculation include Overdepth Material adjacent to the Grade contour line?






**ANSWER: Yes**

**QUESTION # 3**
Is the Overdepth material that is not overlain by the required Grade material considered as Pay material?




**ANSWER:** Yes, as long as it is within the dredging prism (cross-hatched areas)

**QUESTION # 4**
Will the contractor be paid for all Overdepth material removed within the Hatched Contract Areas on the Contract Drawings?

**ANSWER: Yes**

CESAC-CT

MEMORANDUM FOR RECORD

SUBJECT: Determination and Findings for Utilizing Negotiated Procurement Process for the Maintenance Dredging in Charleston Harbor and Georgetown Entrance Channel, South Carolina.

DETERMINATION

Based on the following, I hereby determine that subject solicitation should be solicited under FAR Part 15 and that FAR 6.401(a) does not apply.

FINDINGS

1. Maintenance Dredging and Beach Renourishment Procurement History - FY 2007:

a. Charleston Harbor Upper Reaches, solicitation # W912HN-06-B-0021. This solicitation was issued on 18 October 2006 as an IFB. Bids were opened on 29 November 2006 and awarded on 08 December 2006. We received three bids and all were in excess of the amount of funds available for the project of $4,224,000.00. Bids submitted were as follows; Marinex $4,609,970.00, Cottrell $5,783,550.00, and Southern Dredging $6,324,860.00. Since the Government solicited this under the IFB process, the only options available to the Government were to convert the IFB to an RFP and begin the negotiation process or seek additional funding. We obtained additional funds and the government chose to award to the low bidder.

b. Folly Beach Renourishment, solicitation # W912HN-07-B-0001. This solicitation was issued on 22 November 2006 as an IFB. Bids were opened on 28 December 2006. We received only one bid in the amount of $8,426,000.00. The Independent Government Estimate (IGE) was $5,790,565.00, thus making the bid outside the awardable range. We converted the IFB to an RFP and needed several rounds of discussions before an agreed to price could be negotiated. Award was finally made, nearly 8 weeks after opening of bids, on 23 February 2007 to Great Lakes. Had this project been an RFP initially, this procurement time of 57 days could have been significantly reduced.

c. Procuring these particular services under sealed bid procedures forced the government to award to the bidder who provided the lowest price and was deemed responsible. It was our position then that the sealed bid procedures when performing even routine maintenance dredging jeopardized the Government's ability to select contractor's who offered the best value to the Government considering equipment availability, period of performance, environmental windows, and price and also significantly increased the amount of time required to award contracts. At this point, SAC determined that the acquisition strategy for contracts such as maintenance dredging and beach renourishment would be by the RFP process instead of IFB.

d. Naval Weapons Station Dredging, solicitation # W912HN-07-R-0057. The solicitation was issued on 12 June 2007 as an RFP utilizing low price technically acceptable source selection method. Proposal due date was 12 July 2007 and we received three offers all under the IGE. Discussions were not required. Award was made to Marinex on 20 July 2007. We received no protests.

e. Myrtle Beach Renourishment, solicitation # W912HN-07-R-0076. The solicitation was issued on 24 July 2007 as an RFP utilizing low price technically acceptable source selection method. Proposal due date was 24 August 2007 and we received three offers. Only one of the offers was under the IGE. Discussions were not required. Award was made 6 September 2007 to Great Lakes. We received no protests.

2. Charleston Harbor Entrance Channel Maintenance Dredging Procurement History:

a. The following is a summary of the last six procurements for the Charleston Harbor Entrance Channel; all procured utilizing the IFB method:

1. W912HP-05-B- 0005; Awarded 10/2005 – 4 bidders – All over the IGE
2. DACW60-03-B-0008; Awarded 10/2003 – 4 bidders – All lower than the IGE
3. DACW60-03-B-0001; Awarded 11/2002 – 2 bidders – All lower than the IGE
4. DACW60-99-B-0002; Awarded 02/1999 – 2 bidders – All over the IGE
5. DACW60-98-B-0012; Awarded 11/1998 – 2 bidders – All lower than the IGE
6. DACW60-97-B-0017; Awarded 12/1996 – 2 bidders – All over the IGE

b. Based on the fact that 3 of the last 6 procurements were over the IGE, we determined that the probability was high that if solicited as an IFB, the procurement would need to be converted to RFP as we anticipated we would again be limited on available funds and fully expected that we would be operating pursuant to Continuing Resolution Authority limitation. The probability was also high that discussions would need to be held in order to identify disparities. In addition, the RFP process allows the Government to conduct negotiations to clarify and question any parts of the proposals that are not clear, whereas the IFB process does not.

3. Request for Proposal:

a. FAR 6.401(a) states that Contracting officers shall solicit sealed bids if --

(1) Time permits the solicitation, submission, and evaluation of sealed bids;
(2) The award will be made on the basis of price and other price-related factors;
(3) It is not necessary to conduct discussions with the responding offers about their bids; and
(4) There is a reasonable expectation of receiving more than one sealed bid.

b. Because of the problems associated with contracts of this nature in the past as denoted above with Charleston Harbor Upper Reaches and Folly Beach, it was clear that on more than one occasion it was necessary to conduct discussions and that we must have the flexibility to conduct

clarifications, discussion and/or negotiations with offerors. In addition, due to the current Continuing Resolution Authority, the funding availability is extremely limited. Charleston Harbor is one of the 14 US strategic ports. It is the 5th busiest container port in US and provides over 35% of the equipment and material in support of reconstruction efforts in Iraq and Afghanistan. Charleston District only dredges our Entrance Channel every other year so it is critical for the channel to be dredged this year. The term "this year" also includes the caveat that the dredging must take place within the "turtle window" as established by agreement with the South Carolina Department of Natural Resources to be 15 December through 31 March.

c. FAR Part 1.602 in part provides Contracting Officers wide latitude to exercise sound business judgment when determining all necessary actions for effective contracting while also safeguarding the interests of the United States in its contractual relationships.

d. Since the beginning of CY 2007, following the above referenced problems in the issuance of
the Charleston Harbor Upper Reaches and Folly Beach contracts, the acquisition strategy for the Charleston District has been to issue solicitations, including dredging projects as RFPs in order to allow consideration of other than price-related factors. To date, SAC has procured the last five projects through the RFP process without protest. The factors used on these RFPs were:

(1) **Past performance**, this factor allows the government the flexibility to review all of the offers past performance to include CCASS rating and working knowledge of the offeror.
(2) **Project experience**, for this factor the offeror must submit the production rate of the dredge being proposed for usage on this requirement and must be capable of dredging at least 250,000 cubic yards a month (this amount is defined as project specific). This factor is vital to ensuring timely project completion due to the fact the governments required performance period is based on a monthly production rate. This performance period is used for planning purpose to ensure performance occurs within the mandatory environmental windows.
(3) **Equipment documentation**, this factor allows the government to review the contractor proposed plant and equipment to be used. This was specifically an issue with the Folly Beach IFB. KTR (Great Lakes) proposed using different plant equipment which was not the most cost effective. This is vital to project completion as it allows the Government an up front review to ensure the equipment is adequate for successful project completion.
**(4) Small business Participation Plan**

5. Although there is no guarantee that negotiations will be necessary, it is highly likely due the procurement history documented above. It is also in the Government's best interests to question any concerns it might have about an offerors proposal especially when it concerns issues such as limitations on dredging activity due to endangered species which require the dredging to be completed within the environmental window. The RFP will include the standard language that encourages the offeror to submit their best terms and conditions with their initial proposal because we cannot always guarantee that negotiations will be required.

6. Due to the potential that a low bidder in a sealed bid scenario would not have sufficient plant and equipment available to perform or, if they did, would not have an adequate production rate to complete this work within the limited time-frame based upon environmental considerations; it becomes vital that the Government consider non-price related factors.

7. Although, FAR 9.104(b) provides the Government with the ability to consider performance schedule during the responsibility determination under a sealed bid scenario, the Government has historically found it extremely difficult to determine a low bidder non-responsible on the grounds that their plant was not available or possessed an adequate production rate. Therefore, it is in the best interest of the Government to consider other than price related factors and have the option of conducting clarifications, discussion, and or negotiations.

8. It is the Government's position that it must have the ability to review the contractor's plant and equipment capability/availability to assure the work can be performed in accordance with the contract schedule. Additionally, to further reduce the performance risk to the Government, past performance must be reviewed as required in FAR Part 15.304 (c)(2) to assure a high level of confidence, low risk, that the contractor consistently delivers on their contracts as the Government cannot afford to face non-execution due to non-performance. FAR 15.304(c)(2) states, "The quality of the product or service shall be addressed in every source selection through consideration of one or more non-cost evaluation factors such as past performance, compliance with solicitation requirements, technical excellence, management capability, personnel qualifications, and prior experience;" and (3)(i) states "past performance shall be evaluated in ALL source selections for negotiated competitive acquisitions expected to exceed $1,000,000.00". FAR 15.305 (a) (2) (i) states that "This comparative assessment of past performance information is separate from the responsibility determination required under Subpart 9.1". This is why the RFP will weight "Past performance as significantly more important than price."

9. Based upon all the facts contained herein, it is the recommendation of the contract specialist that the Contracting Officer determine that it is in the Government's best interest to procure this work under FAR Part 15, contracting by Negotiation. The award of this contract must provide the Government full flexibility and should be awarded on factors other than price alone and discussions, clarifications, and negotiations may well be necessary to ensure the Government's confidence in the offerors ability to adequately perform the requirement..

PREPARED BY:

AMELIA K. BRYANT
Contract Specialist

APPROVED BY: Lauri Newkirk
LAURI NEWKIRK
Contracting Officer
11/27/07